Vineet Bhatia (VB 9964)
SUSMAN GODFREY L.L.P.
590 Madison Ave., 8th Floor
New York, NY 10022
Main Telephone: (212) 336-8330

James L. Garrity, Jr. (JG 8389)
Marc B. Hankin (MH 7001)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York  10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: Adelphia Communications Corporation, et al. | ) ) ) | Chapter 11 |
| | ) | Case No. 02-41729 (REG) |
| Debtors | ) | Jointly Administered |
| _____ | ) | |
| Rembrandt Technologies, LP | ) | |
| | ) | Adversary Proceeding |
| *Plaintiff/Counter-defendants* | ) | |
| | ) | No. 06-01739 (REG) |
| v. | ) | |
| | ) | |
| Adelphia Communications Corporation; | ) | |
| Century-TCI California, LP; | ) | |
| Century-TCI California Communications, LP; | ) | |
| Century-TCI Distribution Company, LLC; | ) | |
| Century-TCI Holdings, LLC; | ) | _____ Civ._____ (    ) |
| Parnassos, LP; | ) | |
| Parnassos Communications, LP; | ) | |
| Parnassos Distribution Company I, LLC; | ) | |
| Parnassos Distribution Company II, LLC; | ) | |
| Parnassos Holdings, LLC; | ) | |
| Western NY Cablevision, LP | ) | |
| | ) | |
| *Defendants/Counterclaimants* | ) | |
| _____ | | |

**Memorandum of Law in Support of Rembrandt Technologies, LP's**
**<u>Motion to Withdraw the Reference to the Bankruptcy Court</u>**

This is a patent infringement action against Adelphia Communications Corporation ("Adelphia") and certain related debtor entities.   Plaintiff Rembrandt Technologies, LP's complaint asserts four causes of action: infringement of U.S. Patent Nos. 5,710,761 (the "'761 Patent"); 5,778,234 (the "'234 Patent"); 6,131,159 (the "'159 Patent") and 6,950,444 (the "'444 Patent") (collectively, the "Patents-in-Suit").   To resolve the issues underlying the above-captioned adversary proceeding (the "Adversary Proceeding"), the trial court, in accordance with federal patent law, will – at a minimum – need to construe the claims set forth in the Patents-in-Suit, determine whether the accused systems infringe on the asserted claims, make a finding of validity based upon any prior art or other arguments asserted by Adelphia, and consider the merits of Adelphia's laches defense.   Because, "[u]nquestionably, determining whether an accused product infringes a patent requires significant and material consideration of patent law," mandatory withdrawal of the reference of this patent infringement action is appropriate.   *The Singer Co., B.V. v. Groz-Beckert KG (In re The Singer Co., N.V.,)* 2002 WL 243779 at *3 (S.D.N.Y. February 20, 2002).

## Statement of Facts

On June 10, 2002, Century Communications Corp., an Adelphia Communications Corporation ("Adelphia") subsidiary, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   Thereafter, commencing on June 25, 2002, and continuing periodically thereafter, Adelphia and substantially all of its subsidiaries filed voluntary petitions under chapter 11 of the Bankruptcy Code.   After seeking bankruptcy protection, Adelphia and its affiliates continued to provide cable internet and television services to consumers throughout the United States until the sale of substantially all of their assets on July 31, 2006, to Time Warner Cable and Comcast.

2

On September 13, 2006, Rembrandt Technologies, LP ("Rembrandt") commenced the Adversary Proceeding by filing a complaint (the "Complaint")[1] against Adelphia and certain of its subsidiaries and affiliates set forth therein as defendants (collectively, the "Defendants"). That same day Rembrandt filed a corresponding administrative expense claim (the "Rembrandt Administrative Claim") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").[2]   The Adversary Proceeding seeks damages in respect of the Defendants' post-petition infringement, in violation of 35 U.S.C. § 271, of the Patents-in-Suit. On November 27, 2006, the Defendants filed their answer (the "Answer") to the Complaint.  The Answer contains counterclaims that the Patents-in-Suit are invalid for failing to satisfy the requirements in 35 U.S.C. § 101, *et seq.*; that the doctrine of laches bars Rembrandt from bringing this action; and that Adelphia's services did not infringe the Patents-in-Suit.[3]   On December 15, 2006, Rembrandt filed its reply (the "Reply") to the counterclaims.[4]

No formal discovery has taken place with respect to these claims or counterclaims. Instead, the time spent in Bankruptcy Court to date has been dedicated to determining an appropriate amount to reserve for Rembrandt's claims.  Before going forward with the merits of

---

[1]      A copy of the Complaint is attached as Exhibit A to the Declaration of Marc B. Hankin In Support of Rembrandt Technologies, LP's Motion To Withdraw The Reference To The Bankruptcy Court (the "Hankin Declaration").

[2]      A copy of the Rembrandt Administrative Claim is annexed as Exhibit B to the Hankin Declaration.  The bar date for filing administrative expense claims against the Defendants, other than Adelphia, was September 14, 2006.  Pursuant to the Bankruptcy Court's Order Confirming First Modified Fifth Amended Joint Chapter 11 Plan for Adelphia Communications Corporation and Certain of its Affiliated Debtors, dated January 5, 2007 (the "Confirmation Order"), the bar date for filing administrative claims against Adelphia is forty days after service of a Notice of Confirmation.  Confirmation Order at 35-37.  As of the date hereof, no such notice has been filed with the Bankruptcy Court or received by Rembrandt.

[3]      A copy of Defendants' Answer is annexed as Exhibit C to the Hankin Declaration.

[4]      A copy of Rembrandt's Reply is annexed as Exhibit D to the Hankin Declaration.

3

the case, Rembrandt needed to ensure that there would be funds to pay any judgment obtained. Absent a reserve, Rembrandt could not have that assurance.

On November 22, 2006, Rembrandt objected to confirmation of the Fifth Amended Joint Chapter 11 Plan for Adelphia Communications Corporation and Certain of Its Affiliated Debtors (the "Adelphia Plan"), requesting, *inter alia*, that confirmation of the Adelphia Plan be conditioned upon the establishment of a cash reserve that would be used solely to satisfy the Rembrandt Administrative Claim once such claim is fixed and liquidated. At Adelphia's request, the Bankruptcy Court scheduled a hearing for the purpose of estimating the amount of cash to be reserved for Rembrandt's benefit in connection with the proposed confirmation of the Adelphia Plan. The parties engaged in limited discovery solely with respect to this estimation hearing. As noted above, formal discovery with respect to the Adversary Proceeding has not yet commenced.

Just prior to the scheduled estimation hearing, and the submission of any pleadings with respect to that matter, the parties agreed on the funding of a separate reserve for the Rembrandt Administrative Claim. On December 13, 2006, the Bankruptcy Court entered a stipulated order that, *inter alia*, established a $35 million cash reserve in respect of the Rembrandt Administrative Claim in the event the Adelphia Plan was confirmed by the Bankruptcy Court and became effective (the "Reserve Stipulation").[5] The Reserve Stipulation expressly provides that the stipulation is without prejudice to Rembrandt's right to be paid from any available source of Adelphia funds in the event the Rembrandt Administrative Claim is ultimately allowed in an amount greater than $35 million. The Bankruptcy Court confirmed the Adelphia Plan by order dated January 5, 2007. With the Reserve Stipulation in place and the Bankruptcy Court having

---

[5]      A copy of the Reserve Stipulation is annexed as Exhibit E to the Hankin Declaration.

confirmed the Adelphia Plan, Rembrandt now wishes to proceed with the merits of its case in the

United States District Court.

<u>**Argument**</u>

I.     **Withdrawal of the Reference is Mandatory Because Resolution of the  Adversary**
       **Proceeding Requires Substantial and Material Consideration of Patent Law**

28 U.S.C. § 157(d) ("Section 157(d)") describes mandatory withdrawal as follows:

> The district court . . . shall, on timely motion of a party, . . .
> withdraw a proceeding if the court determines that resolution of the
> proceeding requires consideration of both title 11 and other laws of
> the United States regulating organizations or activities affecting
> interstate commerce.

"'The purpose of the [mandatory withdrawal provision in] Section 157(d) is to assure that an

Article III judge decides issues calling for more than routine application of [federal laws] outside

the Bankruptcy Code.'" *Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.),*

2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004) (quoting *Eastern Airlines, Inc. v. Air Line*

*Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.),* 1990 WL 5203, at *5 (S.D.N.Y. Jan. 24, 1990)).

Accordingly, Section 157(d) "require[s] withdrawal to the district court of cases or issues that

would otherwise require a bankruptcy court judge to engage in significant interpretation, as

opposed to simple application, of federal laws apart from the bankruptcy statutes." *City of New*

*York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991).

"Withdrawal under §157(d) . . . is reserved for cases where substantial and material

consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the

proceeding." *Shugrue v. Air Line Pilots Ass'n (In re Ionosphere Clubs, Inc.),* 922 F.2d 984, 995

(2d. Cir. 1990) (quoting *In re Ionosphere Clubs, Inc.*, 103 B.R. 416, 418-19 (S.D.N.Y. 1989)

(footnote omitted)); *accord Enron Power Marketing,* 2003 WL 68036, at *4.  Notably, however,

the issues of non-bankruptcy federal law raised by the proceeding need not present issues of first

5

impression or even involve the application of unsettled case law to meet the mandatory withdrawal standard. *McCrory Corp. v. 99¢ Only Stores (In re McCrory Corp.)* 160 B.R. 502, 505 (S.D.N.Y. 1993). So long as the bankruptcy judge must engage in "something more than the mere process of examining, thinking about or taking into account" non-bankruptcy federal laws, mandatory withdrawal is required. *In re Horizon Air, Inc.*, 156 B.R. 369, 373 (N.D.N.Y. 1993) (citing *Am. Freight Sys., Inc. v. ICC (In re Am. Freight Sys.*), 150 B.R. 790, 792 (D. Kan. 1993)); s*ee also In re Keene Corp.*, 182 B.R. 379, 382 (S.D.N.Y. 1995) ("Withdrawal is . . . warranted when resolution of the matter would require the bankruptcy judge to 'engage in significant interpretation, as opposed to simple application,' of federal non-bankruptcy statutes.") (quoting *City of New York*, 932 F.2d at 1026).

Patent infringement actions are precisely the sort of cases in which mandatory withdrawal is appropriate, as this Court recently demonstrated in *Singer*, 2002 WL 243779, *3 (S.D.N.Y. Feb. 20, 2002). The defendant in *Singer* sought to withdraw the reference of an adversary proceeding in which, among other things, the plaintiff sought a declaration that it held an implied license in a sewing needle patent, and the defendant sought to recover damages predicated on plaintiff's alleged infringement of the patent. In granting the motion, this Court held that "withdrawal is mandatory because resolution of the adversary proceeding requires substantial and material consideration of domestic patent law, a statutory creation." *Id.* In so holding, this Court found that patent law issues were "central to the complaint," *id.,* noting that

> [u]nquestionably, determining whether an accused product infringes a patent requires significant and material consideration of patent law. This determination requires a two-step analysis in which the court must construe the disputed patent claims and then apply the construed claims to the accused device . . . The claim construction itself requires a hearing, followed by the court's examination of the intrinsic evidence (the words of the patent itself), the prosecution history, if in evidence, and in some instances, extrinsic evidence.

*Id.* (citations omitted).[6]  *See also In re Nat'l Gypsum Co.*, 145 B.R. 539, 541-42 (N.D. Tex. 1992) (holding that mandatory withdrawal of the reference is appropriate in a complex patent infringement case in which the defendant raised the defenses of best mode and prior art to the validity of the patents, and an antitrust defense to the enforcement of the patents).  Indeed, as in *Singer*, to resolve the matters at issue in the Complaint, the trial court will be required to "construe the disputed patent claims and then apply the construed claims to the accused device." *See Singer*, 2002 WL 243779 at *3.

Here, there is no doubt that the resolution of Rembrandt's claims requires substantial and material consideration of United States patent law.  The Patents-in-Suit disclose inventions designed to enhance the ability of the component parts of Adelphia's cable system to interface with one another and to facilitate the use of Adelphia's services by its customers.  More specifically, the '761 Patent relates to the "error control negotiation" phase of a data connection, which can be thought of as a sort of "handshaking" sequence between modems; the '444 Patent teaches a method for improving the way that modems transmit the first portion or "preamble" of data over communication lines, thereby improving modem data transmission generally; and the '159 and '234 Patents facilitate the remote updating of operating software on a modem, so that no activity by the subscriber is required.  Rembrandt's action arises entirely from the fact that the technology employed by the Defendants in operating Adelphia's high speed cable internet

---

[6]     Similarly, in *McCrory*, this Court held that mandatory withdrawal is required where the proceeding raised issues that would require substantial and material consideration of issues under the Lanham Act. *McCrory*, 160 B.R. at 505.  It based its conclusion on the fact that "[i]nterpreting Lanham Act provisions to a given set of facts is, generally, neither simple nor straightforward." *Id.*  For instance, the court must determine the parties' rights to various marks under trademark law, whether the marks are protected under the Lanham Act, and whether the uses of the marks created a likelihood of confusion. *Id.* at 506.  *McCrory* is further evidence that mandatory withdrawal is appropriate for cases dealing with a body of complex federal law and involve complexity in the application of the law.

7

system infringed these four U.S. patents.  Like *Singer*, this action "[u]nquestionably… requires significant and material consideration of patent law."  2002 WL 243779, *3.[7]

## II.    The Motion to Withdraw the Reference is Timely

This Motion has been timely made, as required by Section 157(d).  This case is in its infancy:  the only proceedings that have occurred to date involved the bankruptcy-specific process of agreeing to reserve an amount for the Rembrandt Administrative Claim.  At a practical level, Rembrandt was forced to resolve the reserve issue before proceeding with the merits; otherwise there could be no guarantee that there would be *any* amount of money to satisfy Rembrandt's claims once liquidated.  Now that Adelphia and Rembrandt have agreed to a reserve, it is time to proceed with the merits of this litigation by withdrawing the reference from the Bankruptcy Court.

Neither the statute nor case law prescribe a specific time limit within which a motion to withdraw the reference must be filed.  *Lone Star Indus., Inc. v. Rankin County Econ. Dev. Dist. (In re New York Trap Rock Corp.)*, 158 B.R. 574, 577 (S.D.N.Y. 1993).  In place of a specific time limit, courts have stated that "a motion is timely if it is made as soon as possible in light of the status of the bankruptcy proceedings." *In re Texaco Inc.*, 84 B.R. 911, 919 (S.D.N.Y. 1988) (citations omitted).

Here, only slightly more than three months have passed since Rembrandt filed the Complaint.  During all of that time, the parties have focused on the estimation of Rembrandt's

---

[7]    It is plain that the conduct complained of here has more that a *de minimis* effect on interstate commerce. Rembrandt alleges that the high speed internet services infringed the Patents – in – Suit.  Adelphia provided these services across state lines, and thus infringed the patents while participating in interstate commerce.  The trial court's interpretation of patent laws will therefore have more than a *de minimis* effect on interstate commerce.  In a patent case like this one, this is almost a foregone conclusion.  *See In re Nat'l Gypsum*, 145 B.R. at 542 ("[I]t is apparent that the nature of the alleged patent infringement is such that its effect, if infringement is found, would be on items placed in the stream of commerce.  Thus, the non-[Bankruptcy] Code federal law would have more than a *de minimis* effect on interstate commerce.").

claim for purposes of establishing a reserve in connection with the Adelphia Plan.   No

substantive motions have been filed with the Bankruptcy Court.   Now that Rembrandt and

Adelphia have agreed upon a reserve for the Rembrandt Administrative Claim, it is time to

withdraw the Adversary Proceeding from the Bankruptcy Court.

<u>**Conclusion**</u>

Based upon the foregoing, Rembrandt respectfully request that this Court enter an Order

withdrawing the reference of the Adversary Proceeding to the Bankruptcy Court.

Dated:  January 10, 2007

SUSMAN GODFREY L.L.P.


By: /s/ Vineet Bhatia
    Vineet Bhatia (VB 9964)
    590 Madison Ave., 8th Floor
    New York, NY 10022
    Main Telephone: (212) 336-8330


SHEARMAN & STERLING LLP


By: /s/ James L. Garrity, Jr.
    James L. Garrity, Jr. (JG 8389)
    Marc B. Hankin (MH 7001)
    599 Lexington Avenue
    New York, NY  10022
    Main Telephone:  (212) 848-4000
    Main Fax:  (212) 848-7179

    *Attorneys for Plaintiff /Counter-defendant*
    *Rembrandt Technologies, LP*

NYDOCS03/823894.5